IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PETER CHISDOCK and
SANDRA CHISDOCK,
Wife and Husband,
     **Plaintiffs**

  v.

WANDA MONK and
ALABAMA MOTOR EXPRESS, INC.,
     **Defendants**

No. 3:10cv1941

(Judge Munley)

## MEMORANDUM

  Before the court for disposition is the plaintiffs' motion for sanctions based upon Defendants' falsification of Interstate Commerce Commission logs and spoliation of critical evidence and the defendants' motion for partial summary judgment.  The motions have been fully briefed and are ripe for disposition.

**Background**

  A traffic accident involving plaintiffs and defendants occurred on January 12, 2010.  (Doc. 1, Compl. ¶ 5).  While traveling south on Interstate 81 in a construction zone near Dupont, Pennsylvania, the plaintiffs' automobile was rear-ended by a tractor rig driven by Defendant Wanda Monk in the course and scope of her employment with Defendant Alabama Motor Express, Inc. (hereinafter "AME"). (Id. ¶¶ 8, 10, 13 - 16).  Plaintiffs assert that they suffered severe physical injuries due to the accident.  (Id. ¶ 17).  They thus instituted the instant lawsuit seeking compensatory and punitive damages from the defendants.

  On February 11, 2010, approximately one month after the January 12th accident, plaintiffs' counsel sent a certified letter to Defendant AME requesting that all information, including witness reports, regarding the

accident be preserved.   (Doc. 29-1, at 45 of 64, Pl. Ex. B).   The letter warned the defendants that failure to preserve the evidence could lead to a motion for sanctions based upon spoliation of evidence.  (Id.)

The parties proceeded through discovery, with the discovery period ending on April 15, 2010.  (Doc. 15, Case Management Order).  Plaintiffs then filed the instant motion alleging discovery abuses by the defendants. Plaintiffs allege that the defendants falsified logs kept in accordance with Interstate Commerce Commission rules (hereinafter "ICC logs") and destroyed and/or failed to retain other evidence, including the ECM (black box) from the tractor trailer involved in the accident and the handwritten post-accident statement written by Defendant Monk.   Because of their actions with regard to these discovery matters plaintiffs seek the following:

1) That plaintiffs be deemed to have established a prima facie case for punitive damages against both defendants;

2) That defendants immediately provide financial net worth data;

3) That the issue of compensatory and punitive damages be presented to the jury;

4) That the defendants be fined $25,000.00 each;

5) That the jury be instructed with regard to falsification of evidence.

Defendants oppose the motion for sanctions and have filed a motion for summary judgment on the issue of punitive damages.

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  The plaintiffs are citizens of Pennsylvania. Defendant Monk is a citizen of Tennessee and Defendant AME is a citizen of Alabama.  (Doc. 1, Compl. ¶¶ 1 - 4).  Because we are sitting in diversity,

2

the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Discussion**

As noted above, plaintiffs have filed a motion for sanctions and the defendants have filed a motion for partial summary judgment.  We will address each motion separately.

   **I.  Plaintiffs' motion for sanctions**

Plaintiffs' motion involves the alleged spoliation of evidence. Spoliation of evidence is the destruction of evidence relevant to a dispute. See In re Hechinger Inv. Co. of Del., Inc., 489 F.3d 568, 579 (3d Cir. 2007).  The spoliation of evidence may lead to sanctions including "the outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the 'spoliation inference.'" Howell v. Maytag, 168 F.R.D. 502, 505 (M.D. Pa. 1996).  Id.  This "spoliation inference" is that the "destroyed evidence would have been unfavorable to the position of the offending party."  Id. (quoting Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994)).

In determining whether a party has engaged in spoliation a court examines: 1)  whether the evidence was in the party's control; and 2) whether the party has actually suppressed or withheld the evidence. Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995).   Generally, the burden to establish spoliation of evidence is on the party asserting that spoliation has occurred.  Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 107-08 (2d Cir. 2001).

Once spoliation has been established, courts should examine the

following factors in deciding what sanction to impose:

> (1) the degree of fault of the party who altered or destroyed the evidence;
> (2) the degree of prejudice suffered by the opposing party; and
> (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

Schmid, 13 F.3d at 79. The third factor helps to ensure that the least onerous sanction is imposed in proportion to the willfulness of the party that destroyed the evidence. Id.

We will discuss each piece of alleged spoliaton in turn.

**A. Handwritten post-accident statement by Defendant Monk**

The first piece of evidence discussed by the parties is a handwritten post-accident statement prepared by the truck driver, Defendant Monk. At her deposition, Defendant Monk indicated that she filled out an accident report for Defendant AME immediately after the collision. (Doc. 29-1, Def. Monk Dep. at 83). This report is part of a "kit" AME provides to its drivers. (Id.) Monk hand delivered the statement to AME to the attention of Daniel Banner the Safety Director of AME. (Id. at 94, 112).

Defendant AME, however, has not presented a copy of this report to the plaintiffs. Defendant AME's safety director discussed this report at his deposition. He indicated that the report is not in the file regarding this collision. (Doc. 40-4, Banner Dep., at 24). He does not know whether the report was misplaced or never received. (Id.) Plaintiffs argue that Monk indicated that she turned the hand-written report to AME at the same time that she turned in accident photographs. AME has these photographs. Because it has the photographs, according to the plaintiffs, it must also have had the report and some time and destroyed it or failed to turn it over.

The evidence, however, does not necessarily lead to the plaintiffs' conclusion. The report could have met many ends. It could have been misfiled, or not turned in - despite Monk's testimony - or inadvertently discarded.

We find that the facts as presented do not warrant sanctions against the defendants. Plaintiffs have not established that the defendants destroyed evidence. The facts merely reveal that Defendant Monk asserted that she drafted the statement and delivered it to the Defendant AME. Defendant AME indicates that it does not have the report. Based upon this evidence, and all the other facts in the case, the jury will be left to make whatever inference it finds is supported by the evidence.

**B. ECM (black box)**

The next piece of disputed discovery material is the electronic control module device, "ECM", or "black box" from the truck. (Doc. 29, Motion for Sanctions ¶ 18). The plaintiffs explain this evidence as follows: "The ECM or black box is an electronic control module device (much like the black box on an airplane) which monitors the speed of the vehicle at all times as it is driven. Following a collision, the ECM can be downloaded to produce a written printout of the vehicle's speed at the time of the collision." (Id.) Plaintiffs' position is that this information from the ECM could be used to determine the speed of the vehicle at the time of the collision. Such evidence would either verify or contradict Defendant Monk's testimony that she was traveling at a reduced rate of speed at the time. (Id. ¶ 24). Defendant AME, however, has never provided ECM printouts or the ECM device itself to the plaintiffs.

Plaintiffs indicate that AME's safety director admitted that the truck

had a "governor," a device that limits the speed of the tractor trailer to sixty-four miles per hour.  Thus, he must have known that the truck had an ECM that could be downloaded and provide relevant information such as the speed of the truck at the time of the accident.  His testimony to the contrary - that he did not know they could obtain such information - was thus willfully false, according to the plaintiffs.  We disagree; such an inference does not necessarily follow from the facts.  Plaintiffs have not provided evidence to support the contention that knowledge that a truck had a "governor" indicates knowledge of an ECM.

     Defendants' indicate that their service department did not have the capability to download the information from the ECM.  (Doc. 40-3, Report of Michael S. Cutz, P.E., at 6).  Defendants' safety director testified at his deposition that he spoke with AME's shop foreman who indicated that they did not have the capability to determine the speed of the vehicle at the time of the collision.  (Doc. 40-4, Banner Dep. at 17 - 18).

     As with Defendant Monk's hand-written report, discussed above, plaintiffs have failed to establish that defendants destroyed or withheld information.  Plaintiffs have presented one version of the facts and defendants have provided their explanation.  It will be the jury's task to determine the true facts after hearing the testimony and argument.

**C.  ICC Logs**

     Evidently at the time of the accident, regulations of the Interstate Commerce Commission mandated that Defendant Monk keep a log of her daily driving activities.  The logs record such matters as the amount of time spent driving, the amount of time in the sleeper, the amount of time on duty and the amount of time off duty.  (See Pls. Ex. F, Def. Monk's ICC Logs).

Defendants provided Monk's ICC Logs to the plaintiffs during discovery. Plaintiffs argue that the logs are falsified despite AME's safety director's testimony that the logs are audited by the company. Plaintiffs assert that defendants actually did not audit the false logs and did not prevent Defendant Monk from continuing to submit false logs. (Doc. 29, Mot. For Sanctions ¶ 28).

We find that plaintiffs' allegations do not support a finding of spoliation. This issue will be best addressed through examination of the witnesses and through argument. The jury can then determine whether the logs were falsified and whether the defendants' auditing procedure, or lack thereof, allowed Defendant Monk to draft falsified logs.
Therefore, the portion of the motion for sanctions regarding the ICC Logs will be denied.

In conclusion, the plaintiffs have not established that the defendants spoliated or destroyed evidence with regard to the hand-written report, the ECM device or the ICC Logs. At best, plaintiffs have raised questions with regard to the defendants' handling of the evidence, but the defendants have generally provided explanations for any alleged spoliation. After examination of the witnesses and argument from the parties, the jury will evaluate the evidence. Thus, the plaintiffs' motion will be denied.

**II. Defendants' motion for partial summary judgment**

In addition to the motion for sanctions, before the court is the defendants' motion for partial summary judgment. As noted above, the plaintiffs' complaint seeks, *inter alia*, punitive damages. Defendants move for summary judgment on the issue of punitive damages.

**Summary Judgment standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

In this case, the defendants assert that the record does not support the award of punitive damages.

> The standard governing the award of punitive damages in Pennsylvania is settled. Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others . . . . [W]hen assessing the propriety of the imposition of punitive damages, [t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious.

<u>Hutchison ex rel. Hutchison v. Luddy</u>, 870 A.2d 766, 770 (Pa. 2005) (internal quotation marks and citations omitted). Moreover, "in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." <u>Id.</u> at 772.

Defendants' position is that they did not possess the requisite state of mind to support the award of punitive dames. In fact, defendants argue that the evidence establishes that they acted in a careful and prudent manner.

Defendants' position is baseless. The record is not at all clear regarding the manner in which the accident occurred. It is undisputed, however, that the accident took place as Defendant Monk attempted to change lanes with her tractor trailer, in a construction zone. The plaintiffs present the expert witness report of Trucking Safety Specialist Walt Guntharp, who opines that any attempt of a lane change in a construction zone manifested a reckless disregard for safety and travel laws and jeopardized others' safety. (Doc. 29-2, Pl. Ex. D, Guntharp Report at 4). Moreover, plaintiffs have evidence that Defendant Monk drove sixty-four

miles per hour in the fifty mile per hour speed limit construction zone. Additionally, plaintiffs have evidence that Defendant Monk was using her mobile telephone at the time of the collision.  Plaintiffs' expert opines that had Defendant Monk properly check her mirrors the plaintiffs' vehicle would have been visible to her prior to her attempt to change lanes.  (Id. at 5).

This evidence, if believed by the jury, would support a claim for punitive damages.  It demonstrates a reckless indifference to the rights of others.  Accordingly the motion to dismiss the punitive damages claim against Defendant Monk will be denied.

Because the court has found that Defendant Monk could be liable for punitive damages, we also conclude that Defendant AME could be vicariously liable for punitive damages attributed to Monk. In Pennsylvania, "[p]unitive damages may be awarded on the basis of vicarious liability." Shiner v. Moriarty, 706 A.2d 1228, 1240 (Pa. Super. Ct. 1998). Defendants do not appear to deny that Monk served as an agent "subject to the principal's control over the details of his performance of the task for which he was appointed."  Id.   As such, AME could be liable vicariously if a jury found Monks liable, and the court will deny the motion for summary judgment on these grounds.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PETER CHISDOCK and SANDRA CHISDOCK,** Wife and Husband, **Plaintiffs** | No. 3:10cv1941 (Judge Munley) |
| v. | |
| **WANDA MONK and ALABAMA MOTOR EXPRESS, INC.,** **Defendants** | |

## ORDER

**AND NOW**, to wit, this 25th day of August 2011, the plaintiffs' motion for sanctions (Doc. 29) is **DENIED**. Although the motion is denied, punitive damages remain in the case and the parties should engage in appropriate discovery with regard to that issue.

The defendants' motion for partial summary judgment (Doc. 30) is **DENIED**.

                           **BY THE COURT:**

                           **s/ James M. Munley**
                           **JUDGE JAMES M. MUNLEY**
                           **United States District Court**